**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BARBARA F. JOHNSON** | : | |
| | : | **CIVIL ACTION** |
| v. | : | |
| | : | |
| **LANCASTER -LEBANON** | : | No. 11-cv-01598 |
| **INTERMEDIATE UNIT 13** | : | |
| _____ | : | |

**Goldberg, J.**                                                                          **December 4, 2012**

<u>**Memorandum Opinion**</u>

Plaintiff, Barbara Johnson, brought this employment action against Defendant, Lancaster-Lebanon Intermediate Unit 13 ("Intermediate Unit"), asserting disability discrimination and hostile work environment claims under Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), and the Pennsylvania Human Relations Act (PHRA). Defendant has moved for summary judgment, arguing that Plaintiff's evidence is insufficient to support her discrimination or hostile work environment claims. For the reasons that follow, the Defendant's motion will be granted.

**I. FACTUAL BACKGROUND**

The facts, viewed in a light most favorable to the Plaintiff, are as follows. Plaintiff is a teacher with over twenty-five years of experience teaching children with emotional and learning disorders. Plaintiff suffers from epilepsy, a neurological condition that can cause seizures. Plaintiff's epilepsy has been controlled by medication without adverse effects since 1988. (Pl.'s Counter SOF, Doc. No. 27, ¶¶ 1-5.) Defendant is a Pennsylvania educational service agency serving public schools in Lancaster and Lebanon counties. (Compl. ¶ 7.)

Plaintiff was hired by Defendant on August 17, 2009 for a position teaching emotionally

disturbed children at the Intermediate Unit's Manheim Education Center ("IU"). As required for her employment, Plaintiff submitted a medical clearance from her primary care physician. The doctor reported that Plaintiff had no special medical problems that would affect her work. As part of the medical clearance, Plaintiff disclosed her epilepsy. No concerns were raised at this point. (Def.'s SOF, Doc. No. 24, ¶¶ 10-12, 16.)

Before the start of classes on August 31, 2009, Plaintiff was required to undergo Crisis Prevention Intervention training, which included instruction on the physical restraining of students under certain circumstances. Plaintiff did not object to this training. During training, a rumor was started that Plaintiff commented that she could not restrain students due to her epilepsy. The rumor eventually made its way to Plaintiff's supervisor, Anna Edling. (Def.'s SOF, ¶¶ 17, 20.) Edling arranged for Intermediate Unit Human Relations employee Susan Billy to contact Plaintiff regarding the rumor. (Def.'s SOF, ¶¶ 6-8; Pl.'s Counter SOF, ¶ 21.)

On Friday, August 28, 2009, Billy called Plaintiff and requested verification from her neurologist that she was capable of conducting the restraint methods. Plaintiff was unable to obtain a note from her neurologist during the weekend prior to classes. On Sunday, August 30, 2009, Billy called Plaintiff again and during this conversation, Plaintiff requested to speak with supervisor Lisa Figurelle. Later that day, Figurelle contacted Plaintiff, who requested that a meeting be arranged for the following day. (Pl.'s Counter SOF, ¶¶ 19-20, 24, 28-29; Johnson Dep., pp. 85, 88-90.)

The meeting on Monday, August 31, 2009, was attended by Plaintiff, Billy, Edling, and Figurelle. During the meeting, Figurelle and Billy told Plaintiff that they were concerned about her ability to safely manage a classroom of volatile children. (Johnson Dep., p. 96.) At this point, Plaintiff believed "that this was going to be a discrimination against [her] epilepsy, that it was going

to be a hostile environment." (Id., p. 97.)  Plaintiff placed her work materials on the desk in front of her, and asked Figurelle "where she would like them." (Id.)  Plaintiff stated that she returned the items with the intention of leaving, and in order to convey that she "felt that it was a hostile environment and this was not going to work." (Id., pp. 97-99.)  In response, Billy pointed to a paper tablet on the table and told Plaintiff that she could write her resignation on it. (Id.)  Plaintiff did not put her resignation in writing, but returned her identification badge and was escorted from the building. (Id., pp. 99-104.)  On September 15, 2009, Human Relations employee Caroline Black contacted Plaintiff to request her resignation letter.  Plaintiff denied resigning, and asserted that she had been constructively discharged due to her disability. (Id., pp. 135-36.)

## II.  STANDARD OF REVIEW

On a motion for summary judgment, the Court considers the evidence in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A party moving for summary judgment must show that there are no issues of material fact and that judgment is appropriate as a matter of law.  FED. R. CIV. P. 56(a).  The moving party bears the initial burden of showing that there are no issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial.  Anderson, 477 U.S. at 250.  The non-moving party cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings, but rather, must present evidence from which a jury could reasonably find in its favor.  Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999).

3

## III.  DISCUSSION

### A.        Plaintiff's Disability-Based Discrimination Claim

In order to make out a prima facie case of disability-based discrimination under the ADA, a plaintiff must establish that she (1) has a disability, (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer, and (3) has suffered an adverse employment action because of her disability.  Buskirk v. Apollo Metals, 307 F.3d 160, 166 (3d Cir. 2002).

Defendant does not challenge Plaintiff's disability or her qualifications, but argues that Plaintiff cannot show that she suffered an adverse employment action.  Rather, according to Defendant, Plaintiff resigned her position at the August 31, 2009, meeting.  Plaintiff counters that she never resigned, but was constructively discharged.  In considering whether a claim for constructive discharge can survive summary judgment, a court must determine "whether a reasonable jury could find that the employer permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign."  Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001).  Although not dispositive, common factors alleged by employees claiming to have been constructively discharged include: (1) threat of discharge; (2) urging or suggesting resignation; (3) demotion or reduction of pay; (4) involuntary transfer; (5) change in job responsibilities; and (6) unsatisfactory evaluations.  Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993); Duffy, 265 F.3d at 168.

Plaintiff principally relies upon Billy's suggestion that she put her resignation in writing as evidence of constructive discharge.  (Pl.'s Br., pp. 16-17.)  However, Plaintiff admits that Billy only made this suggestion after Plaintiff had returned all of the items provided to her by the Intermediate

Unit.  (Johnson Dep., p. 99.)  Plaintiff stated that she returned these items with the intention of leaving.  (Id.)  This evidence does not support a finding that Billy "urged" Plaintiff to resign, but rather shows that after Plaintiff indicated her desire to resign, Billy suggested the appropriate means.

Plaintiff also argues that she was constructively discharged "based upon the hostility and humiliation of being deemed a safety hazard without basis."  (Pl.'s Br., p. 17.)  Plaintiff stresses that Defendant required her to provide assurances from her neurologist "over and above what is required for the general population."  (Id., p. 16.)  While Plaintiff may have felt hostility and humiliation because she was required to provide additional medical documentation, the law does "not permit an employee's subjective perceptions to govern a claim of constructive discharge."  Gray v. York Newspapers, Inc., 957 F.2d 1070, 1083 (3d Cir. 1992) (quoting Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985)).  A constructive discharge is determined objectively, by whether conditions were so unpleasant or difficult that a reasonable person would have felt compelled to resign.  Duffy, 265 F.3d at 167.

Plaintiff has not alleged sufficient facts to support a finding that a reasonable person in her position would have had no choice but to resign.  Defendant's request for a supplemental doctor's note may have been more than was required of other employees, but "it is clear that unfair and unwarranted treatment is by no means the same as constructive discharge."  Clowes, 991 F.2d at 1162.  Defendant did not encourage Plaintiff to leave her position, and the conditions of Plaintiff's employment, which had barely even begun, cannot reasonably be characterized as objectively intolerable.  Simply put, Defendant's inquiries into the extent and possible limitations of Plaintiff's epilepsy are not the type of circumstances that would allow a jury to conclude that a reasonable person would have felt compelled to resign.

Finally, Plaintiff alleges that Defendant's failure to engage in the interactive process constitutes an adverse employment action.  The interactive process is intended to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.  29 C.F.R. § 1630.2(o)(3).  Failure to accommodate is considered separately from a constructive discharge, but may qualify as an adverse employment action.  See Colwell v. Rite Aid Corp., 602 F.3d 495, 503-04 (3d Cir. 2010).

> An employee can demonstrate that an employer breached its duty to provide reasonable accommodations because it failed to engage in good faith in the interactive process by showing that: "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith."

Id. at 504 (quoting Williams v. Phila. Hous. Auth. Police Dept., 380 F.3d 751, 772 (3d Cir. 2004).

The record fails to indicate that Defendant breached its duty to accommodate.  In order to be liable for failure to accommodate, there must actually be a  request for accommodations.  Taylor v. Pheonixville School Dist., 184 F.3d 296, 313 (3d Cir. 1999) (To be liable, "the employer must know of both the disability and the employee's desire for accommodations for that disability.").  Otherwise, the employer would have no knowledge that accommodations were needed.  Id.  Plaintiff never requested accommodations because, as she repeatedly points out, her condition has been arrested for over twenty years and she was "capable of performing each and every one of the essential functions of her job, with or without accommodation."  (Pl.'s Counter SOF, ¶¶ 16-17.)  As her disability required no accommodation, there was no need to engage in the interactive process.  Thus, Plaintiff suffered no adverse employment action from Defendant's failure to accommodate.

We conclude that Plaintiff was neither actually nor constructively discharged.  As such, she

has suffered no adverse employment action, and her claim of disability-based discrimination fails as a matter of law.

### B.      Plaintiff's Hostile Work Environment Claim

A plaintiff may establish a violation of Title VII by proving that discriminatory harassment created a hostile work environment.  Huston v. Proctor & Gamble, 568 F.3d 100, 104 (3d Cir. 2009). In order to establish a prima facie case of hostile work environment based on disability, a plaintiff must show: (1) she is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) that the employer knew or should have known of the harassment and failed to take prompt effective remedial action.  Walton v. Mental Health Ass'n of Southeastern Pa., 168 F.3d 661, 667 (3d Cir. 1999).

Defendant argues that the harassment alleged by Plaintiff was not sufficiently severe or pervasive to create an abusive work environment.  Severity and pervasiveness are alternate ways to establish a hostile work environment.  Therefore, a "single incident of severe harassment in the workplace may contaminate the work place to such a high degree that it will be considered hostile." Rorrer v. Cleveland Steel Container, 712 F.Supp.2d 422, 428 (E.D. Pa. 2010).  Alternatively, where the harassment is not as severe, "incidents of harassment must occur either in concert or with regularity."  Id.

To prove that a work environment is hostile or abusive under Title VII, "the environment must be shown to be objectively hostile or abusive, and the plaintiff must have perceived it as a hostile or abusive environment."  Id.  Whether an environment is objectively "hostile" or "abusive" is

7

determined by considering the totality of circumstances, which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

The decision by the United States Court of Appeals in Walton is helpful to our consideration of whether Plaintiff has sufficient evidence of an objectively hostile work environment. In Walton, the plaintiff was fired while on a leave of absence to cope with her depression. She sued her employer on claims of disability-based discrimination, failure to accommodate, and hostile work environment. In support of her hostile work environment claim, Plaintiff alleged that her supervisor threatened to fire her, called her "manic depressive," questioned her ability to work with her illness, called her for ten consecutive days while she was hospitalized to ask when she would return to work, and forbade other staff members from speaking to her while she was hospitalized. Walton, 168 F.3d at 667 n.4. The Third Circuit upheld the district court's dismissal of plaintiff's hostile work environment claim at the summary judgment stage, finding that the conduct alleged by the plaintiff was not sufficiently severe or pervasive to create a material issue of fact for the jury. Id. at 667.

Here, Plaintiff's allegations are far less severe or pervasive than those at issue in Walton, and are not sufficient to support a finding of an objectively hostile work environment. See also Hamera v. County of Berks, 248 Fed.Appx. 422, 425-26 (3d Cir. 2007) (finding nine disparaging comments made over sixteen months concerning plaintiff's religion and alcohol use insufficiently severe or pervasive); Bedford v. Southeastern Pa. Transp. Auth., 867 F.Supp. 288, 297 (E.D. Pa. 1994) ("While the conduct alleged by plaintiff is deplorable, it was isolated and certainly not pervasive."). Plaintiff's allegations concern four occurrences between October 28 and 31, 2009—three phone calls and one

meeting.  Further, one of the phone calls and the meeting were requested by Plaintiff.  These four incidents do not constitute "pervasive" harassment.  Neither was Defendant's conduct toward Plaintiff severe.  Plaintiff acknowledges that nobody at the Intermediate Unit disparaged her disability, used abusive or offensive language, or engaged in conduct that was physically threatening.  Defendant's conduct in following up on concerns regarding Plaintiff's epilepsy was not sufficiently severe or pervasive to allow a reasonable jury to find that it created an abusive work environment.

## IV.  CONCLUSION

For the foregoing reasons, Defendant Lancaster-Lebanon Intermediate Unit 13's Motion for Summary Judgment will be granted.  Our Order follows.